JOSEPH H. BALDWIN v. S. CURTH.

1. WAYGOING TENANT HAVING AN INTEREST IN A FIELD SOWN BY HIM, THE OWNER COMMITS TRESPASS IN PLOWING UP SUCH FIELD.

Where the lease between the landlord and his tenant provides that the waygoing tenant—whose term expired in April—should have a share of the wheat sown by him the prior fall : *Held*, that the owner of the land, in possession, after the termination of the lease, commits trespass in plowing up a field so sown by the tenant.

2. A FARMER MAY TESTIFY AS TO THE VALUE OF GROWING WHEAT.

Where a witness has been a farmer for ten years and during that time has made one purchase of growing wheat, it is not error to allow him to testify as to the value of growing wheat.

3. IT IS NOT ERROR TO EXCLUDE A QUESTION WHICH IS TOO REMOTE.

Where, for the purpose of showing that it was bad husbandry to plow up a meadow in 1894, a question is asked as to the amount of hay grown on said meadow in 1892: *Held*, that it is not error to exclude such question, it being too remote.

4. EFFECT WHERE QUESTION HAS BEEN EXCLUDED AND NO STATEMENT MADE AS WHAT THE ANSWER WOULD HAVE BEEN.

A question as to whether the plowing up of a meadow was in accordance with good husbandry being excluded, and no statement being made as to what the answer would have been, it cannot be said that there was error to the prejudice of the side asking the question.

5. FAILURE OF COURT TO CHARGE THAT TENANT WAS LIABLE TO EXEMPLARY DAMAGES FOR DAMAGES MALICIOUSLY CAUSED—EFFECT.

The jury having found specially that there was no wrong doing on the part of the tenant, it is not error for the court in refusing to charge that the tenant is liable to exemplary damages for damages maliciously caused.

6. PLOWING UP OF FIELD BY OWNER, NOT JUSTIFIABLE.

The owner cannot justify plowing up a field of wheat, in which his former tenant is entitled to a share, on the ground that the tenant had not properly farmed the land, and it was therefore necessary to plow up the field to provide feed for stock.

ERROR to the Court of Common Pleas of Lorain county.

MARVIN, J.

The case of Joseph H. Baldwin v. S. Curth is a proceeding in error, seeking to reverse the judgment of the court of common pleas; and the case grows out of this state of facts.

.Curth brought suit in the court of common pleas, setting out that he leased from Baldwin a farm for a period of two years from the first of April, 1893. A copy of that lease is attached to the petition, and among the provisions in the lease is that certain wheat which was on the ground at the time the term granted by the lease began should belong to the lessor, Baldwin, he should have a right to take it off, and if Curth, the lessee, should leave any wheat growing upon the ground at the end of his term, which would be the first of April, 1895, he should have the right to harvest it, giving to Baldwin the share which under the custom of the community, the land owner would be entitled to if the wheat was raised upon shares, and the division should be made to him, to be measured by the bushel. He says that he did leave twenty-seven acres of wheat growing upon the land when his term ended on the first of April, 1895, wheat which was sown in the fall of 1894, to be harvested in 1895; that Baldwin shortly thereafter entered upon the premises and plowed up and destroyed twelve acres of this wheat to the damage of Curth and in violation of his rights. Baldwin answers admitting that the lease was made, admitting that he plowed up some wheat put in by Curth, but says the amount is less by an acre than that complained of, but he says the reason why he did this is because Curth put in more wheat than he had a right to, and that he had destroyed a meadow which he had no right to destroy.

The lease provided that the farming must be done in a proper manner, according to the rules of good husbandry. He says Curth did not carry out that provision of the lease, and he files with his answer a cross-petition in which he says that Curth cut down and destroyed three maple trees of considerable value for which Baldwin should have pay from

Curth; that he destroyed a meadow by turning his cattle upon it, after he, Baldwin, had seeded it properly to grass, and that he destroyed it; that he permitted certain fence posts to be washed away by high water and that he should pay for these, thus charging Curth with waste in these several ways and he asks a judgment against Curth.

The case was tried to a jury and the jury returned a verdict for the plaintiff in the sum of ninety-eight dollars and some cents. There was submitted to the jury at the request of the plaintiff certain interrogatories which were answered. Attention is called to these. Now because of the fact that some of the law questions are affected by the answers to these questions, (I ought to say a reply was filed to this answer and an answer to this cross-petition, in which the plaintiff says it is true that he cut down three trees, but he says he cut them down with the knowledge and consent of the defendant.).

The lease provided that Curth should have his fire-wood from off the premises, but that he should not cut down growing trees or timber except by special permission of Baldwin.

The first of the interrogatories propounded to the jury upon which they were specially to find, reads " Did the plaintiff cut down the three trees with the knowledge and consent of the defendant?" And the jury answered " Yes."

Second—" Is the plaintiff indebted to the defendant on account of any of the claims set forth in the cross-petition of the defendant?" To which the jury answered " No."

Third—If the plaintiff is indebted to the defendant on account of any of the claims set up in the cross-petition, etc. Of course there was no occasion to answer this, because the jury had already answered that the plaintiff was not indebted to the defendant on account of any of the claims set up in such cross-petition.

An objection was made upon the trial of this case to the introduction of any evidence under the petition. The claim is that no cause of action was set out in the petition. The theory upon which that claim is made is, that this is substantially an action of trespass; that the petition shows that Baldwin was entitled to this land which he plowed, and was entitled to its possession in 1895 and that therefore he could not be held for a trespass upon such land; that the damages which Curth seeks to recover are simply an incident of that trespass and unless an action for trespass can be maintained he cannot recover for such incidental damages.

The case of Brown v. Lake, 29 O. S., 64, is relied on to sustain the proposition that the action cannot be maintained.

The syllabus reads: " In an action to recover damages for unlawfully breaking and entering the dwelling house of the plaintiff and removing the roof therefrom, whereby the property and family of the plaintiff were exposed to the inclemency of the weather, and the plaintiff became sick. *Held:* That if the plaintiff fails to prove the trespass, no recovery can be had on account of any of the alleged consequential damages."

In that case the suit was brought by a party who was in the occupation of a certain dwelling house, and the suit was against the defendant for going upon the premises and removing the roof for the purpose of making repairs, and injury to the health of the plaintiff, resulting from the inclemency of the weather which came in by reason of the removal of the roof. On the trial it turned out that the defendant had

a right to enter upon the premises, that they were his, and the plaintiff had no right there, and the court held that since there was no trespass that could be maintained, no recovery could be had for the injury to the plaintiff's health.

We think there is a clear case here of trespass under the decision in Wilber v. Paine, 1 O., 251. Attention is called here in the argument to Swan's Treatise, 15th edition, pages 825 and 826 ; an examination of these pages seems to establish that Baldwin was a trespasser, if the terms of this petition be true, although the term ended April, 1895, for the party who put in the crop had a right to protect the crop and harvest it, and may maintain trespass against the owner for coming in upon it. We think the ruling of the court that evidence could be introduced under this petition was right.

While the plaintiff was upon the witness stand he was asked what was the fair market value of this growing wheat which was destroyed by Baldwin, an objection was made that he had not qualified, he had not shown that he was prepared to give an answer that would be of any value. It was shown that it is only an occasional thing that wheat is sold, growing wheat by the acre. Although some times sold by administrators of estates of deceased persons and perhaps by others occasionally. The plaintiff, it seems, had purchased two fields of growing wheat. The purchase was all made at one time, it was in Ashland county, some years since, but he was a farmer, had been farming on his own account for ten years and had that much knowledge of the value of growing wheat. We think it was not error to allow him to testify as to the value. It might not be of very great aid to the jury, but he had some knowledge better than a man who knew nothing of farming, better than a man who never made a purchase, or knew of a sale or purchase of wheat upon the ground, growing wheat by the acre, and we do not think there was any error in allowing that question to be answered.

The defendant put upon the witness stand Lawson Taylor, and he was being examined with a view to showing that the management of the farm by Curth had not been such as good husbandry would require; that he did not properly farm the land, and that it was bad husbandry to have destroyed the meadow that it was alleged had been destroyed, plowed up for the purpose of putting in this wheat, and Taylor was asked about the character of that meadow. He was finally asked the question, " How much hay was cut to the acre upon that meadow when Risden occupied the farm?" Risden had been a tenant of Baldwin and it was the summer of 1892 that Risden cut this hay. This land was plowed up for wheat in 1894, and it would seem somewhat remote to undertake to show that it was bad husbandry to plow up a meadow in 1894 which had produced a crop of grass in 1892, and which the defendant proposed to show by Taylor was a ton and a half to the acre. We think there was no error in excluding that.

When Baldwin himself was upon the stand he was asked whether the plowing up of this meadow land was in accordance with good husbandry, an objection was made by the plaintiff and that objection was sustained and an exception taken, but no statement was made as to what the answer of Baldwin would have been. For aught that appears he may have said it was in accordance with good husbandry. We cannot say that there was error to the prejudice of Baldwin in this ruling of the court. We do not know what his answer would have been except as we

may infer that a lawyer is not expected to ask a question the answer to which will prejudice his case, though it has sometimes been done.

The court charged the jury, and the only exception taken to the charge was to the refusal of the court to charge as requested by the defendant. There were two requests made to charge, one of them was, " If you find from the evidence that the plaintiff did not leave the rented premises of the defendant in as good condition as they were in at the time he took possession thereof, the natural wear and tear excepted, then you may inquire whether he so left them through malice or ill will, if you find from the evidence he did, you may go further than mere pecuniary damages and give the defendant exemplary damages, that is such damages as will be an example, and in that way you may include a reasonable attorney fee." This the court refused, but the jury found specially that the defendant was not entitled to recover on any of the things set up in his cross-petition, so whether that ought to have been given or not there was no prejudice; because the jury found there was no wrong doing on the part of the plaintiff there surely was no malice, therefore, there was no error to Baldwin's prejudice in refusing to give this request.

The other request I will not stop to read, as it is long. The substance of it is, if you find that the plaintiff had not properly farmed that land and had not left the feed on the farm that good husbandry would require, and the like, and that in order to restore the farm to as good condition of husbandry as when the plaintiff took possession and that to provide a proper amount of feed and support for stock it became necessary to plow up this wheat, that the defendant had a right to plow it up and the plaintiff could not recover. We do not suppose that one may go and destroy the property of another in such a way as this, go and plow up his crop of wheat because he hasn't farmed the land as it ought to have been farmed, and without reference to how valuable the wheat is as compared with the injury that has been done. That is not the way for a man to right his wrongs, the court properly refused to charge this request.

And one other objection urged is, that the damages are excessive; the damages are, as found by the jury, ninety-eight dollars and some cents, and the claim is made that the jury made a mistake in this, since Baldwin was to have one-third of the wheat, for they say that that would be the share that Baldwin would be entitled to under the custom of the community; since he is to have one-third, leaving Curth two-thirds, that it would be a mistake to allow Curth the value of the entire two-thirds as it stands upon the land, and I think that that is true. If there were twelve acres of wheat growing and each acre was of equal value so that one-third of that set off to Baldwin would have been his share, and each acre was worth ten dollars, Baldwin's four acres would be worth more than ten dollars an acre, because he is to have his cut and threshed at the expense of Curth. So that if an estimate was made by saying that it is worth $12.00 an acre and there were twelve acres, and Curth's interest in it is two-thirds they made a mistake; it would not be two-thirds, for he would have to pay for whatever was necessary to get Baldwin's share into the bushel.

Baldwin's was worth more than one-third of the wheat as it stood upon the ground, for Curth was to be at the expense of cutting and harvesting his own and also at the expense of cutting and harvesting that of Baldwin. The testimony is that the expense of that would be in the

neighborhood of three dollars an acre. Although there is a dispute as to how much there is of this, and there is a dispute as to the value, yet there is testimony to justify the jury, if they believed it, in finding it was worth $12.00 an acre and there were twelve acres, if that is so it would be worth $144.00. Then Baldwin's share would be worth $48.00 in addition to that, Baldwin's share would be worth what it would cost to cut and harvest it, this at $3.00 per acre would give Baldwin $48.00 plus $12.00 and there would remain for Curth $144.00 less $60.00 which would be $84.00 and the interest computed on that from the time the injury is said to have been committed up to the time when this was heard was $15.12 that would have been $99.12 and the jury found $89.00 so that making the computation in the way I think it should be made and the way it is claimed, still the evidence is such we cannot say the damages are excessive and the judgment is affirmed.

*H. G. Redington*, for defendant in error.
*Judge Kelley* and *C. W. Johnston*, for plaintiff in error.